UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 JUN -7 P 4: 38

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |  |
|---|---|---|
| ROBERT ROGERS YOCUM, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 04 CV 10687 RGS |
| | ) | |
| DSM, N.V., DSM FOOD SPECIALTIES, | ) | |
| USA, INC., LAND O'LAKES, INC., | ) | |
| AND MELROSE DAIRY PROTEINS, INC. | ) | |
| | ) | |
| Defendant | ) | |

## DEFENDANT DSM FOOD SPECIALTIES USA INC.'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS
## MOTION TO DISMISS OR TRANSFER

Plaintiff's ("Mr. Yocum") complaint is nothing more than an attempt to improperly deny

Defendant DSM Food Specialties USA, Inc. ("DSM USA") its rights as the first filer of a

declaratory judgment action in the United States District Court for the District of Minnesota.

DSM USA's first-filed suit arose as a result of Mr. Yocum's improper attempts to interfere with

DSM's business in Minnesota by threatening DSM USA's Minnesota-based customers. DSM is

entitled to all of the benefits and obligations that accrue from being the first party to file suit.

Therefore, DSM USA respectfully requests that this Court dismiss Mr. Yocum's suit in favor of

DSM's pending Minnesota action.

Even assuming the propriety of the later-filed suit, venue is improper in Massachusetts

under any theory put forth by Mr. Yocum, and Mr. Yocum has admitted as much. Therefore,

this Court should either dismiss the case or transfer it in the interests of justice and considering

the interests of the parties. Because the majority of the parties have ties to Minnesota or have

voluntarily submitted themselves to personal jurisdiction in Minnesota, and because much of the

discovery, including depositions, will take place in Minnesota, the interests of justice dictate that the case, at a minimum, be transferred to Minnesota

Because there is a first-filed suit pending in Minnesota, all of Mr. Yocum's proposed defendants (except DSM N.V.) are subject to personal jurisdiction in Minnesota, Mr. Yocum has submitted himself to the jurisdiction of the Minnesota court, and the convenience of the parties dictates that the Minnesota suit proceed, DSM USA respectfully requests that this Court exercise its discretion to dismiss Mr. Yocum's suit in favor of DSM USA's pending action. In the alternative, DSM USA requests that, in the interests of justice, this Court transfer Mr. Yocum's case to Minnesota.

## I.    FACTUAL BACKGROUND

DSM USA is an importer and distributor of a product, chymosin, which it markets under the trade name Maxiren®. Affidavit of Peter Kempe, Ex. A at ¶ 3. Chymosin is a protein used in the cheesemaking process. *Id.* at ¶ 3. Maxiren® is not manufactured in the United States. *Id.* at ¶ 4. In facilities outside the United States, DSM Food Specialties B.V. ("DSM B.V.") uses *Kluyveromyces lactis* to produce an inactive protein having no chymosin activity. *Id.* at ¶ 4. This protein is then later converted to chymosin by chemical treatment. *Id.* at ¶ 4. DSM USA sells Maxiren® in the United States for use in the cheesemaking industry. *Id.* at ¶ 5.

U.S. Patent No. 6,214,577 ("the '577 patent") issued on April 10, 2001, naming Robert Rogers Yocum as the sole inventor. The '577 patent generally claims (1) DNA sequences and vectors having an antibiotic resistance gene, and yeast chromosomal DNA, where expression of the gene is controlled by a promoter sequence that is not naturally associated with that gene; (2) DNA sequences and vectors having an antibiotic resistance gene, yeast chromosomal DNA, and

a heterologous gene, where expression of the antibiotic gene is driven by a promoter sequence that is not naturally associated with that gene; (3) yeast cells into which these DNA sequences and vectors have been introduced; and (4) a method of transforming yeast cells using the previously described DNA constructs. The patent provides for selection of yeast cells containing these DNA constructs using the antibiotic to which the transformed yeast cells are resistant. *See* the '577 Patent, Claims 1-6, 8-12. There is no good faith argument that could be made that DSM's allegedly infringing product, Maxiren®, falls within the scope of any of these claims. There is one additional claim, Claim 7, directed to a method of using the recombinant yeast cells allegedly claimed in the '577 patent to produce a desired protein. While this claim, again, does not encompass the DSM B.V. process, it is presumably the basis for Mr. Yocum's allegations of infringement.

DSM B.V. and Mr. Yocum engaged in extensive negotiations regarding a potential license to the '577 patent between April, 2001 and early 2004.[1] After the negotiations ended, Mr. Yocum began to threaten DSM USA's Minnesota-based customers with patent infringement. Kempe Aff., Ex. A at ¶ 10. On March 16, 2004, Mr. Yocum sent letters to Land O'Lakes, Inc. ("LOL") and Melrose Dairy Proteins, Inc. ("Melrose") indicating his belief that these companies were "infringing upon the patented rights contained [in the '577 patent] by importing to the United States and using artificial rennin (chymosin) under the trade name Maxiren® from DSM N.V."[2] *Id.* Attached to the letters was a draft complaint for the District of Massachusetts naming

---

[1] A predecessor company, Gist-Brocades, previously had dealings with Mr. Yocum regarding his patents, and elected to take a fully paid up license to a related patent for $40,000. Kempe Aff., Ex. A at ¶ 9.

[2] Mr. Yocum apparently selected DSM N.V., a holding company with no manufacturing capabilities, as an alleged infringer and defendant because of the appearance of DSM N.V. as the owner and operator of a DSM website.

DSM N.V., LOL and Melrose as defendants. *Id.* at ¶ 11.

LOL informed DSM USA of Mr. Yocum's threatening letter. Kempe Aff., Ex. A at ¶ 12. Upon learning that Mr. Yocum was contacting DSM USA's customers, DSM USA and DSM B.V. began to evaluate their options. At this time, neither DSM N.V., DSM B.V., nor DSM USA had received a letter from Mr. Yocum. DSM N.V. received a letter from Mr. Yocum on March 24, 2004, five days before DSM USA filed suit.

On March 29, 2004, DSM USA filed a declaratory judgment action against Mr. Yocum in the United States District Court for the District of Minnesota, based on Mr. Yocum's explicit allegations of infringement ("the Minnesota action"). Mr. Yocum was served on April 1, 2004. Upon being served, Mr. Yocum filed this suit ("the Massachusetts action"). DSM USA was not served until April 26, 2004. LOL was served on May 27, 2004, and DSM N.V. was served through the Hague Convention on June 2, 2004. As presently informed, Melrose has not been served in the Massachusetts action.

In the Minnesota action, Mr. Yocum filed a Motion to Dismiss or Transfer based on personal jurisdiction and venue arguments. Ex. B. The Minnesota court initially set a motion hearing date of June 17, 2004, but later reset the date to July 23, 2004. Because the briefing dates in Minnesota are tied to the hearing date, briefing in Mr. Yocum's Minnesota Motion to Dismiss is not scheduled to be completed until July 11, 2004.[3]

---

[3] Although briefing in this suit will be completed earlier than that for Mr. Yocum's Minnesota motion, due to the different scheduling approaches taken by the Courts, DSM USA respectfully requests that this Court defer consideration of DSM USA's Motion to Dismiss or Transfer until after the Minnesota court rules. The resolution in Minnesota, where both the complaint and the responsive pleading were filed first, will likely moot many, if not all, of the issues addressed in DSM USA's motion.

## II.  ARGUMENT

### A.  DSM USA's First-Filed Suit Takes Priority Over Mr. Yocum's Later-Filed Suit

"The general rule...is that 'as a principle of sound judicial administration, the first suit should have priority,' absent special circumstances." *Kahn v. General Motors Corp.*, 889 F.2d 1078 (Fed. Cir. 1989). This case is as simple as applying the "first-to-file" rule, because there are no special circumstances. Although Mr. Yocum has argued in the Minnesota action that DSM USA improperly engaged in a "race to the courthouse," [4] nothing could be further from the truth. Again, Mr. Yocum selectively presents his facts and recasts facts upon which he has already relied. For instance, in his arguments related to personal jurisdiction and venue in the Minnesota action, Mr. Yocum made much of the "fact" that DSM USA was not named in either the letters sent to DSM USA's customers or the complaint attached thereto. He also noted that a similar letter was not sent to DSM USA. These facts, however, when coupled with the long history of negotiations between Mr. Yocum and DSM B.V. demonstrate exactly why DSM USA was entitled to file suit when it did, and also why it should be accorded the deference due a properly-filed and first-filed suit. [5] DSM B.V. had reached a breaking point in its negotiations

---

[4] DSM USA also notes that in Mr. Yocum's Motion to Dismiss in Minnesota, he loudly complained about the race to the courthouse and, pointed to how he filed his suit immediately after being served with DSM's complaint. However, Mr. Yocum failed to note that it took him more than three weeks after filing his suit to serve DSM USA. In view of this delay, Mr. Yocum's histrionics about being taken advantage of ring hollow. Mr. Yocum may have raced to the courthouse to file his suit, but he took the slow boat when it came to effecting service of the suit on DSM USA. Indeed, it seems that service conveniently was effected only just in time for Mr. Yocum to use it in his lawyer's affidavit attached to his Motion to Dismiss or Transfer.

[5] Mr. Yocum relied heavily on *Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002 (8th Cir. 1993) in his Motion to Dismiss as evidence of compelling circumstances to overcome the first-to-file rule, but that reliance is misplaced. In that case, there was no indirect attack on the declaratory judgment plaintiff through its customers, prompting a move to protect business

with Mr. Yocum, and informed him that it would not take a license to the '577 patent under the terms Mr. Yocum proposed. Mr. Yocum then elected to attack and harass DSM USA's customers and use DSM N.V.'s name in those attacks without notifying DSM N.V., DSM B.V. or DSM USA that it was pursuing an infringement case against those customers. When it learned of Mr. Yocum's attacks on DSM USA's customers, and indirectly DSM USA, DSM USA properly and legitimately moved to protect its interests and the interests of its customers. There was no race to the courthouse to preempt Mr. Yocum's suit, instead there was a legitimate effort to prevent further unwarranted and inappropriate interference with DSM USA's business relationships.

One of the exceptions to the first-to-file rule, while not directly applicable in this case, also demonstrates the underlying policy reasons for according DSM USA's suit the priority to which it is due. This is the 'customer action' suit. *See, e.g., Kahn v. General Motors Corp.*, 889 F.2d 1078 (Fed. Cir. 1989); *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735 (1st Cir. 1977); *William Gluckin & Co., Inc. v. Int'l Playtex Corp.*, 407 F.2d 177 (2d Cir. 1969). Under this exception, when the patentee is the first to file an infringement suit, but files the suit against customers of a manufacturer, and the manufacturer subsequently files a declaratory judgment action, preference is given to the later-filed declaratory judgment action. *Kahn*, 889 F.2d at 1081; *Codex*, 553 F.2d at 737-738; *Gluckin*, 407 F.2d at 178-180. As the *Codex* court noted:

> At the root of the preference for a manufacturer's declaratory judgment action is the recognition that, in reality, the manufacturer is the true defendant in the customer suit. In spite of [the patentee's] vigorous protests to the contrary, it is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its

---

interests. However, even based on the facts cited by Mr. Yocum in his extensive quote from that case, the Court found that there was no race to the courthouse. *Id.* at 1007.

products.

553 F.3d at 737-738. Although the facts are somewhat different in this case, the policy still

applies. DSM USA is the true defendant, and acted as such by filing its declaratory judgment

action when it learned of Mr. Yocum's threats against its customers. Mr. Yocum then later filed

his infringement action against DSM USA, and DSM USA's customers. Because DSM USA

was actually the first to file in this case, the policy arguments underlying the customer suit

exception to the first to file rule even more strongly favors granting priority to DSM USA's suit.

For the foregoing reasons, DSM USA requests that this Court dismiss Mr. Yocum's later

filed patent infringement action in favor of the previously filed Minnesota action.

**B.    The District of Massachusetts is Not a Proper Venue for The Case**

Assuming that this Court finds that the first-to-file rule does not apply, the Court should

still dismiss or transfer the case for lack of proper venue. Mr. Yocum asserts that venue is proper

under 28 U.S.C. § 1400(b)[6]; however, by Mr. Yocum's own admission that provision does not

apply in this case.

Section 1400(b) provides:

> Any civil action for patent infringement may be brought in the judicial
> district where the defendant resides, or where the defendant has committed
> acts of infringement and has a regular and established place of business.

Given the fact that DSM USA has no presence whatsoever in Massachusetts, it does not fall

under the "residence" provision of § 1400(b). For the same reason, the second part of § 1400(b),

---

[6] Mr. Yocum's complaint also alleges venue under 28 U.S.C. § Section 1391(d), but presumably
that is only directed to DSM, N.V. Significantly, Mr. Yocum does not invoke 28 U.S.C. §
1391(b). However, for the reasons presented with respect to Section 1400(b), general venue is
improper in Massachusetts under 28 U.S.C. § 1391(b).

which is a two-part requirement, does not apply:  DSM USA does not have a "regular and established place of business" in Massachusetts.  Kempe Aff., Ex. A at ¶ 6.  Although DSM USA has sold a minimal amount of Maxiren® in Massachusetts over the past three years, Ex. A at ¶ 7, Mr. Yocum has admitted that the underlying alleged infringing acts have not taken place in Massachusetts.  In his Motion to Dismiss in the Minnesota action, Mr. Yocum argues that the allegedly infringing sales and offers for sale take place at the location of DSM USA's offices, *in Pennsylvania*.  Ex. B at 13-14.

When venue is improperly laid, the court should dismiss the suit, or if the interests of justice demand, transfer the suit.  28 U.S.C. § 1406.  In this case, for the reasons stated above with respect to DSM's first-filed suit, dismissal is the appropriate remedy.

### C.    Absent Dismissal, The Court Should Transfer the Case to Minnesota Under Either 28 U.S.C. § 1404 or 1406

Under 28 U.S.C. § 1404 or § 1406, the court retains discretion to transfer the case to a district where it could have originally been brought, if the interests of justice so require.  Section 1404 further provides that the analysis include consideration of "the convenience of the parties and witnesses."  In this case, assuming that the Court does not dismiss Mr. Yocum's complaint, the interests of justice mandate that the case be transferred to Minnesota.

Of the four named defendants in the Massachusetts action, two (LOL and Melrose) are located in Minnesota.  DSM USA itself has voluntarily appeared in Minnesota, and does not contest personal jurisdiction in Minnesota.  Personal jurisdiction over the fourth named defendant, DSM N.V., remains an open question, but venue would at least be proper with respect to DSM N.V. under 28 U.S.C. § 1391(d).  Although Mr. Yocum has argued in the Minnesota action that it is inconvenient for him to appear in Minnesota, it was his choice to sue

8

two Minnesota-based companies. It was also his choice to reach into Minnesota and harass DSM USA's customers. Given that Mr. Yocum is an individual and has elected to sue four corporations, the bulk of the discovery will most likely be of the named defendants. Mr. Yocum will still have to conduct a great deal of discovery in Minnesota, and, therefore, he will incur many of his expenses regardless of the venue. Moreover, given the Minnesota District Court's adoption of electronic filing procedures, neither Mr. Yocum nor his Boston-based counsel need incur additional expense for filing motions or other papers in Minnesota. Any time that Mr. Yocum will need to take away from his job for the purposes of the suit will also be independent of the venue.

DSM USA will incur the same inconvenience whether the case is tried in Minnesota or Massachusetts. DSM USA's customers, however, are another matter. The convenience and interests of LOL and Melrose are clearly tied to Minnesota. Their witnesses also will likely be found in Minnesota, as will their documents.

Mr. Yocum, through his purposeful directions of contacts at Minnesota companies, and through his attempts to disrupt DSM USA's business with Minnesota companies, has subjected himself to the jurisdiction of the Minnesota courts. Moreover, based on DSM USA's current knowledge, in order to pursue Melrose as a defendant, Mr. Yocum will have to voluntarily submit himself to personal jurisdiction in Minnesota.

For all these reasons, this suit could have originally been brought in Minnesota, and thus if the Court declines to dismiss Mr. Yocum's suit, the interests of justice dictate transfer of the suit to Minnesota.

III.    CONCLUSION

For the foregoing reasons, DSM USA respectfully requests that this Court grant its Motion to Dismiss this action. Should the Court decline to dismiss Mr. Yocum's action, DSM USA respectfully requests that the Court transfer the case to the United States District Court for the District of Minnesota.

Respectfully submitted,

Dated: June 7, 2004

_____
Timothy C. Blank (BBO No. 548670)
**DECHERT LLP**
200 Clarendon Street
27th Floor
Boston, MA 02116-5021
Phone: (617) 728-7100
Fax: (617) 426-6567**Error! Unknown document property name.**

OF COUNSEL:
John J. McDonnell
James C. Gumina
S. Richard Carden
Paul S. Tully
**McDONNELL BOEHNEN HULBERT
 & BERGHOFF LLP**
300 S. Wacker Drive
Chicago, IL 60606
Phone: (312) 913-0001
Fax:    (312) 913-0002

**ATTORNEYS FOR DEFENDANT
DSM FOOD SPECIALTIES USA, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing DEFENDANT DSM FOOD SPECIALTIES USA, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS OR TRANSFER was served this 7th day of June, 2004, on the following by hand delivery and facsimile:

> Evan Slavitt, Esq.
> BODOFF & SLAVITT LLP
> 225 Friend Street
> Boston, Massachusetts 02114-1812
> Phone: (617) 742-7300
> Fax: (617) 742-9969

11